UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICOLE SANDERS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | Cause No. 1:15-cv-426 |
| | § | |
| ANA GUZMAN, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

**MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANT DOUG PECK**

TO THE HONORABLE U.S. DISTRICT JUDGE LEE YEAKEL:

Defendant Doug Peck moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:

**Nature of the Case**

This is a student free speech case.  Plaintiff Nicole Sanders is a student at Blinn College, a public community college located in Brenham, Texas.  Doug Peck is a professor who teaches ceramics.  Sanders claims that she engaged in speech protected by the First Amendment.  She alleges that Peck responded to her speech by making comments that she found critical and upsetting.  Sanders claims that Peck's speech was retaliatory.  Peck moves to dismiss all of Plaintiff's claims against him.  Plaintiff's allegations, even if true, fail to state a claim for which relief may be granted, and Peck is entitled to qualified immunity from suit as a matter of law.

**Summary of Plaintiff's Allegations**

In February 2015, Sanders started a new student club on campus.  In connection with the new club, Sanders sought to recruit members, display posters, and distribute leaflets.  *See* Original Complaint, Docket Entry No. 1 ("Cmplt.") at ¶¶ 18-20, 91.  She alleges that other

school officials – not Doug Peck – prevented her from exercising her free speech rights.  *Id.*, ¶ 44.

Approximately two months later, in April 2015, Sanders told Peck that she would miss class to travel to Washington, D.C., to visit with a "liberty" group.  Cmplt. ¶ 43.  On April 16, 2015, after the trip, Peck allegedly asked Sanders about her trip and asked her why the organization would assist her in traveling to Washington, D.C.  Cmplt. ¶ 45.  He allegedly told her to "think really hard" before "bringing some organization to campus" that would "cause havoc" for the college.  *Id.*, ¶ 46.  Sanders alleges that Peck said that he would "protect me and mine" from accusations against Blinn College.  *Id.*  Peck told her that she "better think" before she took further action.  *Id.*, ¶ 46.  Sanders alleges that she "felt like Defendant Peck was attempting to intimidate her." *Id.,* ¶ 48.  Four weeks later, Sanders filed this lawsuit.  (Dkt. 1.)

## Standard for Dismissal

To avoid dismissal under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A conclusory assertion is a conclusion without "factual enhancement" to support the conclusion.  *Id.*  Although the court must accept well-pleaded facts as true, conclusory allegations are not entitled to a presumption of truth.  *Id.* at 678-79.  Additionally, when a complaint pleads acts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'"  *Id.* (citation omitted).

## ARGUMENT AND AUTHORITIES

**I.    Doug Peck is entitled to qualified immunity because Plaintiff's allegations, assumed to be true, do not implicate clearly established law.**

### A.    Overview of the law of qualified immunity

Sanders seeks damages pursuant to 42 U.S.C. § 1983 based on alleged violations of the First Amendment to the United States Constitution.  *See* Cmplt. ¶ 95.   Section 1983 authorizes a cause of action against any person who, acting under color of state law, deprives a United States citizen "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides a remedy for the deprivation of existing constitutional or federal statutory rights.  *Wilson v. Garcia*, 471 U.S. 261, 278 (1985).

Public servants are immune from suit unless their conduct violated "clearly established" federal law.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Immunity protects public officials from the disruption and costs associated with litigation.  *Mitchell v. Forsyth*, 472 U.S. 511 (1985).  Because of this public policy, plaintiffs may not engage in discovery until they have supported their constitutional claims with sufficient facts that, if true, would overcome the immunity defense.  *See Iqbal*, 556 U.S. at 685-86.

The availability of qualified immunity is a question of law.  *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991).   Courts must determine (i) whether the plaintiff has described a violation of a constitutional right and (ii) whether the right was "clearly established" at the time of the official's conduct.  *Pearson v. Callahan*, 555 U.S. 223, 223-24 (2009).  Courts may decide which of the two prongs should be decided first in light of the circumstances of the case.  *Id.* at 225. The plaintiff bears the burden of showing that the official violated "clearly established" law. *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010).  The plaintiff must identify the violation of a "particularized" right.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  A plaintiff may

not defeat immunity by describing a "general proposition" of constitution law. *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2084 (2011).    The plaintiff must show that the "contours" of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alexander v. Eads*, 392 F.3d 138, 146 (5th Cir. 2004).  This means that "existing precedent" must have placed the constitutional question "beyond debate." *Ashcroft*, 131 S.Ct. at 2083.

    **B.**    **Sanders' allegations do not implicate the First Amendment or the Fourteenth Amendment.**

Although Sanders offers the conclusory assertion that she was subjected to "retaliation," her factual allegations fall far short of establishing this claim or negating Peck's immunity from suit.  Sanders' claims that Peck's actions violated the First Amendment and Fourteenth Amendment, see Complaint ¶ 92, lack legal and factual merit.

The First Amendment right to free speech protects not only the affirmative right to speak, but also the right to be free from retaliation for the exercise of that right. *See Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1968).  In the Fifth Circuit, to state a claim for retaliation, a plaintiff must allege that (1) she engaged in constitutionally protected activity; (2) the defendant's actions caused an injury that "would chill a person of ordinary firmness" from continuing to engage in that activity; and (3) the actions complained of were substantially motivated by the plaintiff's protected activity. *Culbertson v. Lykos*, Nos. 13-20569, 13-20751, 2015 WL 3875815 at *5 (5th Cir. June 22, 2015), citing *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002).  Under this test, not all disadvantages imposed by a defendant constitute an injury that may give rise to a claim for retaliation. *Colson v. Grohman*, 174 F.3d 498, 510 (5th Cir. 1999).  "[S]ome retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258.  "A

plaintiff must cross a certain threshold of harm before she can bring a claim for First Amendment retaliation." *Matherne v. Larpenter*, 216 F.3d 1079 at *3 (5th Cir. 2000).

Accordingly, Fifth Circuit precedent requires that the plaintiff show that a defendant's conduct resulted in more than a *de minimis* injury or inconvenience. *See generally Smart v. Holder*, No. EP-09-CV-101-KC, 2009 WL 2498213 at *5 (W.D. Tex. Aug. 12, 2009), *aff'd*, 2014 WL 935147 (5th Cir., March 10, 2010) (affirming the dismissal of claim by a plaintiff who alleged that an assistant U.S. attorney had called the state agency where he was doing legal research and had encouraged the state agency not to allow the plaintiff to use the agency's resources to litigate against the federal government). This standard excludes numerous actions that can chill speech, including retaliatory criticism, unwarranted investigations, and defamation. *Colson,* 174 F.3d at 511-512; *see, e.g.*, *Matherne*, 216 F.3d 1079 at * 3 ("Although she was understandably miffed when she was publicly called a liar and accused of filing a false report, defamation or criticism followed by nothing more produces nothing actionable under the First Amendment."). To be actionable, the conduct must be specific and severe, such as the "concrete intimidating" tactic of officers' detaining someone with guns drawn[1] or publicly releasing humiliating information about a rape victim.[2] *See Bailey v. City of Jasper*, No. 1:12-cv-153, 2012 WL 4969126 at *4 (E.D. Tex. Sep't 24, 2012) (unreported) (collecting cases). The Fifth Circuit reaffirmed this standard as recently as June 2015 in *Culbertson*, in which the court held that the plaintiffs, who were blood alcohol experts, could not recover against a prosecutor who publicly disparaged them, threatened their licensing, and investigated one of them for perjury. *Culbertson*, 2015 WL 3875815 at *13.

---

[1]    *Keenan*, 290 F.3d at 259.
[2]    *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998).

In the academic realm, the court in *O'Neal v. Falcon*, 668 F.Supp. 2d 979 (W.D. Tex. 2009), rejected the claim of a community college student who alleged that a speech professor had retaliated against her by criticizing her in front of the class and by giving her a B- rather than an A+. The professor had banned students from presenting speeches on the subject of abortion. The plaintiff challenged the restriction, leading to a confrontation in class. *Id.* at 982-983. The court held that criticism from a professor in class was "part and parcel of the student experience" and was not actionable. *Falcon*, 668 F.Supp.2d at 988.

### 1.   Peck's speech in response to Sanders' speech is not actionable.

When a public servant's alleged retaliation is in the form of speech, courts tread lightly, recognizing that the public servant's own First Amendment rights may be implicated. *See Black Farmers and Agriculturists Assoc., Inc. v. Hood*, 2014 WL 935147, *10 (S.D. Miss. Mar. 10, 2014) ("The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech."); *Hutchins v. Clarke*, 661 F.3d 947, 856 (7th Cir. 2011) ("We cannot afford one party his right to free speech while discounting the rights of the other party."). Additionally, Section 1983 has never been a vehicle for recovering tort-like damages due to offensive, harsh, or defamatory encounters with public officials. *See Bailey,* 2012 WL 4969126 at *2.

In cases in which the only retaliatory act is expressive activity by a public official unaccompanied by any other governmental action, the plaintiff must show that the official's statements amounted to a threat to exercise coercive governmental authority against the plaintiff. *See, e.g., Bantam Books Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (state commission violated the First Amendment by creating a list of banned books, sending notices to the distributors of the books seeking their "cooperation," advising that the lists were given to local police departments,

and explaining that it was the commission's duty to recommend prosecution); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991) ("[T]he Supreme Court has never found a government abridgement of First Amendment rights in the absence of some actual or threatened imposition of governmental power or sanction."). Further, the threat of sanction must be real and imminent. *See Black Farmers*, 2014 WL 935147 at *10-11.

When the official's retaliatory statement consists merely of vigorous attempts to persuade, the speech is not actionable. Thus, for example, in *Hammerhead Enters. Inc., v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983), the court rejected a retaliation claim by a game developer against a city welfare official who had sent a letter to department stores exhorting them not to sell a new game that mocked people on welfare. The letter strongly urged the stores' "cooperation." *Id*. at n. 2. The court rejected the game developer's retaliation claim: "Having boldly entered the flames of public discussion the First Amendment specifically is designed to kindle," the game developer could not seek judicial relief from harsh criticism in the absence of evidence that the public official attempted to do more than express his view concerning the plaintiff's game. *Id*. at 34. Similarly, in *Venetian Casino Resort, LLC v. Cortez*, 96 F.Supp.2d 1102, 1107 (D. Nevada 2000), a hotel that had publicly threatened litigation against a county recreation board had no remedy for retaliation when the county board authorized its director to hire law firms to pursue appropriate legal claims as may be necessary. *Id*. at 1105. The hotel claimed that the county board was seeking to chill the hotel's criticisms of the county board. Distinguishing general threats from specific threats, the court found the board's resolution too general to establish justiciability. The hotel's concerns about future litigation were "speculative and arguably chimerical fears." *Id.* at 1108.

As in *Hammerhead* and *Venetian*, Sanders' complaint lacks the specificity that would nudge her claim across the line from speculative to plausible.  First, the original complaint does not allege that Peck's speech would chill a person of ordinary firmness or that Sanders actually was intimidated or deterred.[3]  Moreover, she filed this lawsuit just four weeks after speaking with Peck.  Although the requirement of actual injury does not mean that the plaintiff was completely silenced by the defendant, the Fifth Circuit requires some proof that the plaintiff actually curtailed his or her activities.  *See Keenan*, 290 F.3d at 259-60; *see also Mills v. Bogalusa*, 2014 WL 2993426 at * 4 (E.D. La. July 2, 2014) (unreported) (noting that defendant's conduct did not affect the plaintiff's willingness to proceed with her lawsuit); *Bethel v. Town of Loxley*, 221 Fed. App'x 812 (11th Cir. 2006) ("the plaintiff's actual response to the defendant's conduct 'provides some evidence of the tendency of that conduct to chill First Amendment activity.'") (internal citations omitted); *Ford v. Reynolds*, 326 F. Supp. 2d 392, 402 (E.D.N.Y. 2004), *aff'd*, 167 Fed. App'x 248 (2d Cir., Feb. 14, 2006) ("The chilling effect cannot be remote or speculative. Actual inhibition is required. …  Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that [they] did not suffer the harm necessary….")

Second, Sanders does not allege that Peck had any involvement in the free speech activities in the Student Center that occurred two months earlier.  Although not dispositive, the defendant's lack of involvement in the underlying speech episode is relevant when evaluating the potential chilling effect of the defendant's subsequent conduct.  *See, e.g., Bailey*, 2012 WL 4969126 at * 5 (noting that plaintiff's prior free speech activities did not involve the specific police officers that she had accused of retaliation).

---

[3]   Sanders has alleged that she "felt" like Peck was trying to intimidate her, not that he actually did.  Cmplt. ¶ 48.

Third, there are no specific factual allegations that remotely suggest that Peck threatened to invoke governmental power to silence Sanders or that he even had any such power.[4]  Sanders' complaint reveals no threat, either actual or implied.  As a ceramics professor, Doug Peck was in a position to decide, at most, her final grade and whether to excuse her absences for the trip to D.C.  Here, however, there are no allegations that Peck declined to excuse her absences, that he graded her unfairly, or that he ever threatened to do so.  (Tellingly, Sanders' complaint does not disclose her final grade in the ceramics class.[5])  Sanders' vague and conclusory speculation about *potential, unspecified* adverse action is insufficient as a matter of law to state a claim or to negate Peck's immunity. As in *Venetian*, such speculative and chimerical fears are not actionable.  *See also Turkish Coalition of America v. Bruininks*, 678 F.3d 617, 622-23 (8th Cir. 2012) (rejecting free speech claim of student who was worried about the implications of using an unauthorized website for his research; although the college president "*conceivably* could intervene to lower Cingilli's grades or deny him other academic benefits, there is no allegation that he *in fact* engages in such practices. As a result, Cingilli has not 'nudged [his] claims across the line from conceivable to plausible.'") (emphasis in the original).

### 2.    Peck's communication with Sanders did not violate "clearly established" law.

For the law to be "clearly established," the Court "must be able to point to controlling authority" or "a robust, consensus of persuasive authority" that defines the contours of the right

---

[4]   *See, e.g., Neier v. City of Pemberville*, Civ. No. 99-3104, 2000 WL 32008, at *4 (6th Cir. Jan. 4, 2000) (threatening that plaintiff would lose his job unless he dropped his claim was not an adverse action where "[p]laintiff realized that [defendant] was without authority to carry out such a threat and plaintiff does not allege that [defendant] made an effort to have him terminated"); *Hammerhead*, 707 F.2d at 39   (rejecting claim where challenged letter referred to no adverse consequences and where person sending letter had no power to impose sanctions).

[5]   When a complaint omits facts that, if they existed, "would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops Inc*., 859 F.2d 434, 437 (6th Cir. 1988) (citation omitted).

in question with a "high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-372 (5th Cir. 2011) (en banc). In this case, while there is a general right against "retaliation," no pre-existing case law established that Doug Peck's attempt at persuasion would violate the First Amendment. According to the complaint, Sanders missed several school days for voluntary personal travel and, upon her return, she shared details of the trip with her professor and classmates. Peck – a professor from whom Sanders was seeking excused absences – allegedly asked her about the trip. According to Sanders, upon realizing that she might be contemplating litigation sponsored by an out-of-state group, Peck urged her to please "think" before making a major decision that could cause "havoc" on campus. Peck did not threaten to take action against her, and she, in fact, was never chilled in continuing her advocacy by anything he said. As a matter of law, Sanders' allegations do not implicate "clearly established" law as articulated by the Fifth Circuit. Accordingly, Peck moves to dismiss this claim. In the alternative, Peck urges the Court pursuant to Rule 7 to require Sanders to replead with greater specificity to demonstrate the violation of a "clearly established" constitutional right.

## II.     No facts support the official capacity claim against Doug Peck.

Sanders has sued Peck in his official capacity. *See* Cmplt. ¶ 17. A suit against an individual defendant in his official capacity is simply another way of pleading a claim against the governmental entity that employs the official. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Culbertson*, 2015 WL 3875815 at *10.

Under Section 1983, a local government may not be held liable merely because its employees violate the Constitution. *See City of Houston v. Piotrowski*, 237 F.3d 567, 578 (5th Cir. 2001). *Respondeat superior* liability is absolutely prohibited. *Monell v. New York City*

*Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).   Accordingly, to state a Section 1983 claim against a local government, the plaintiff must demonstrate that the entity's "final policymaker" knew about or can be charged with constructive knowledge of the custom, policy, or practice of persistent and widespread violations of the Constitution and that the custom, policy, or practice was the "moving force" behind violation of the plaintiff's constitutional rights. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).   The pleading standard in *Iqbal* applies to municipal liability claims.   *See Prince v. Curry,* 423 Fed. App'x 447, 2011 WL 1659493 at *2 (5th Cir. April 28, 2011); *Vouchides v. Houston Comm. College*, 2011 WL 4592057 at *12-13 (S.D. Tex. 2011).

Sanders does not cite any law or facts showing that Doug Peck was a "final policymaker" for Blinn College.   This is fatal to her official-capacity claim.   Identification of the "final policymaker" is a question of state law.   *See City of St. Louis v. Prapotnik*, 485 U.S. 112, 114 (1988).   The final policymaker is the official or officials whose decisions are unconstrained by policies impose by higher authority.   *See Culbertson,* 2015 WL 3875815 at *11; *see, e.g.*, *Beattie v. Madison Count Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001) (superintendent was not a final policymaker because her decisions were reviewable by the school board).

Under Texas law, the final policymaker for a Texas community college is its elected board of trustees.   *See generally* TEX. EDUC. CODE § 130.082, 130.084; *Saenz v. Dallas Cty. Comm. Coll.*, 2011 WL 1935742 at 4 (N.D. Tex. 2011): *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241 (5th Cir. 1993) (explaining that a Texas school superintendent was a decision-maker but not a "policymaker").   No statute or case law recognizes any other policymaker for a Texas community college.   Because Doug Peck is not a final policymaker for the College, all claims against Peck in his official capacity must be dismissed.   *See generally Culbertson*, 2015 WL

3875815 at *11-12 (dismissing free speech retaliation claim against the Harris County District Attorney in her official capacity because the district attorney was not the final policymaker as to the policy at issue); *see also Vouchides*, 2011 WL 4592057 at *12-13 (dismissing claim where plaintiff failed to identify the final policymaker and failed to describe facts in support of an unconstitutional custom, policy, or practice); *Mills*, 2014 WL 2993426 at *4 (dismissing official capacity claim in retaliation case where plaintiff failed to show that defendant was a final policymaker).

An additional ground supporting dismissal is that there are no facts demonstrating the existence of a custom, practice, or policy of retaliation against students who exercise their free speech rights.  To survive a motion to dismiss on an unconstitutional custom or practice claim, a plaintiff must plead sufficient facts to allow the reasonable inference that there was a "pattern" of misconduct involving "similar" acts.  *See generally Culbertson*, 2015 WL 3875815 at *16 (dismissing free speech retaliation claim because there were no allegations of a widespread practice retaliation against other victims).  In an analogous case, *Vouchides,* 2011 WL 4592057 at *12, a student alleged that a campus police officer detained and mistreated her for discriminatory and retaliatory reasons.  The plaintiff alleged that the officer had a history of complaints and had been "admonished after receiving three complaints for 'going off on people.'"  The lawsuit failed to state a claim.  The facts alleged did not indicate that the college "was aware of a pattern of prior incidents that could show its knowledge and acceptance of the challenged conduct."  *Id*.  "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."  *Id.* (citation omitted).  In this case, Sanders has alleged a single incident of alleged

retaliation, not a widespread pattern or custom.  Accordingly, Peck in his official capacity moves to dismiss Sanders' free speech retaliation claim.

## Conclusion

Defendant Doug Peck moves to dismiss all claims against him in his official and individual capacities.  The Plaintiff has failed to state a claim for which relief can be granted, and Peck is immune as a matter of law. Defendant Peck prays further that he be awarded all relief at law and in equity that the Court deems is just.

Respectfully Submitted,

THOMPSON & HORTON LLP

By:  /s/ Lisa A. Brown
        Lisa A. Brown
        SDT No.: 11478
        State Bar No.: 03151470

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  (713) 554-6751
Facsimile:  (711) 583-7698
lbrown@thompsonhorton.com

ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd of August 2015, a true and correct copy of the foregoing was served on the counsel of record below via the Court's electronic service system and in compliance with the Federal Rules of Civil Procedure.

Nicole L. Williams
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

/s/ Lisa A. Brown
Lisa A. Brown

683322_2
093370.000019